# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

PRAIRIE RIVER HOME CARE, INC.

                     Plaintiff,

v.

PROCURA, LLC
*a/k/a Complia Health*

                  Defendant.

Civil No. 17-5121 (JRT/HB)

**MEMORANDUM OPINION
AND ORDER**

Jade Bailey Jorgenson and Pamela Abbate-Dattilo, **FREDRIKSON & BYRON, PA**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for plaintiff.

Hillard M. Sterling, **WINGET SPADAFORA SCHWARTZBERG LLP**, 135 South LaSalle Street, Suite 1921, Chicago, IL 60603; Klay C. Ahrens, **HELLMUTH & JOHNSON PLLC**, 8050 West 78th Street, Edina, MN 55439, for defendant.

Plaintiff Prairie River Home Care, Inc. ("Prairie River"), brings this fraud and contract action against Defendant Procura, LLC, arising from the sale of software. Procura moves to dismiss Prairie River's Amended Complaint in its entirety. The Court will conclude that Prairie River has sufficiently stated claims for fraudulent inducement, breach of contract, and breach of express warranty. However, the Court will dismiss Prairie River's claims for breach of implied warranty of merchantability, rescission, and consequential damages. Accordingly, the Court will grant in part and deny in part Procura's motion.

# BACKGROUND

## I.  FACTUAL BACKGROUND

The following recitation of facts is based on the allegations contained in Prairie River's Amended Complaint.  (Am. Compl. ("Compl."), Dec. 13, 2017, Docket No. 23.)

### A.  Sale of the Software

Prairie River is a Medicare-certified, home health care provider in the state of Minnesota.  (*Id.* ¶¶ 1, 5-8.)  Procura designed and developed the Procura Software Program (the "Software") – an agency-management software package for health-care providers.  (*Id.* ¶¶ 9-12.)  The Software provides clinical, mobile, operational, financial, and resource-management tools for health-care providers working with elderly and disabled populations. (*Id.* ¶ 10.)

In May 2015, Prairie River contacted Procura about its Software because Prairie River was looking for new software with enhanced documentation capabilities.  (*Id.* ¶¶ 12-13.)  Between June and October 2015, Procura demonstrated its Software for Prairie River on a number of occasions.  (*Id.* ¶ 14.)  During these demonstrations, Procura made numerous representations about the Software's capabilities.  (*Id.* ¶¶ 15-18.)  Prairie River informed Procura that it needed the Software to "go live" no later than January or February 2016.  (*Id.* ¶ 20.)  Procura led Prairie River to believe that this deadline was feasible and that Procura had transitioned "tons" of Riversoft clients to Procura's Software.  (*Id.* ¶¶ 20-21.)

In September 2015, Procura sent representatives to Prairie River's corporate office to negotiate the Software sale. (*Id.* ¶ 24.) Prairie River insisted on having more time to consider the deal. (*Id.*) However, Procura informed Prairie River that it was important for the parties to complete the sale before the end of Procura's third quarter so that Procura could report the sale on its financial statements. (*Id.* ¶¶ 24-25.) Prairie River and Procura entered into a Master Software License and Support Agreement (the "Agreement") on September 30, 2015. (*Id.* ¶ 26; Aff. of Klay C. Ahrens ¶ 2, Ex. A ("Agreement") at 15, Dec. 27, 2017, Docket No. 30.)

## B.     The Agreement

Prairie River purchased a perpetual enterprise license of the Software for "on-premise" installation. (Agreement at 13.) This "Perpetual License Term" grants Prairie River "a perpetual, non-exclusive, non-transferable right and license to access and use the Software and any Work Product to which the Software relates." (*Id.* at 3.) The Agreement defines "Software" as "the software, in object code form, identified in the Software Order, including related Documentation, Enhancements, Modifications, Upgrades, and Embedded Software." (*Id.* at 2.) "Documentation" means "the user guides, operating manuals, educational materials, product descriptions and specifications, technical manuals, supporting materials, and other information relating to the Software." (*Id.* at 1.)

For Software "acquired by Customer as an 'on-premise' software product," the Agreement's Warranty Provision warrants that, "during the ninety (90) day period commencing on the Effective Date [i.e., September 30, 2015]: (a) the Software will be

capable of functioning substantially in accordance with its applicable Documentation." (*Id.* at 8.) To invoke the warranty, Prairie River was required to "notif[y Procura] of the specific non-conformance within the ninety (90) day period referred to" in the Warranty Provision. (*Id.*) The Agreement excludes all other warranties – express or implied – and states that the Software is provided on an "AS IS" basis. (*Id.* at 9.)

Procura also agreed to provide Prairie River with "Software Problem and Hardware support." (*Id.* at 6.) Upon confirmation of a "software problem" (defined as "an inability of the Software to perform, in all material respects, in accordance with its related Documentation"), Procura agreed to "make reasonable efforts to correct the matter." (*Id.* at 2, 6.)

The Agreement contains a number of limitations of liability and damages, including a disclaimer of consequential and incidental damages. (*Id.* at 9.) The Agreement also limits Procura's liability to the amount of fees actually paid to Procura in the 12-month period before initiation of the claim. (*Id.*)

Finally, the Agreement contains an integration clause, which states that the final agreement constitutes "the final and complete expression" of the agreed-to terms and "supersedes all prior proposals, understandings and negotiations between the Parties, whether written or not." (*Id.* at 11.) The Agreement is governed by Illinois law. (*Id.*)

## C.    Implementation

Implementation, training, and configuration of the Software were undertaken by Procura and an associate company, Salo Solutions, Inc. ("Salo"). (Compl. ¶ 33.) The transition did not go smoothly.

Prairie River anticipated that the Software would go live in January or February 2016 – as it had been assured by Procura. (*Id.* ¶¶ 20, 40.) Around November 2015, Procura delivered a database to Prairie River but the database was not functional because it was missing key features necessary to bill Medicare or Medicaid. (*Id.* ¶¶ 37-38.) In November 2015, Salo informed Prairie River that it was impossible for the Software to go live by January or February 2016 and that it took other customers one year to complete the implementation phase. (*Id.* ¶ 40.) The Software finally went live on June 1, 2016. (*Id.* ¶ 41.)

After the Software went live, it failed to function in accordance with its documentation. (*Id.* ¶¶ 43-88). Prairie River notified Procura about these problems but Procura failed to remedy the defects. (*See, e.g.*, *id.* ¶¶ 42, 47-48, 89-102.) Moreover, Prairie River discovered that Procura had made misleading or false statements about the functionalities of the Software during the sales process. (*See, e.g.*, *id.* at pp. 32-33). The defects in the Software hindered Prairie River's ability to bill patients, pushing it to the edge of bankruptcy. (*Id.* ¶¶ 90-91, 102.) Prairie River paid over $800,000 in out-of-pocket expenses as a result of the Software's failure – not including lost profits, lost personnel, and lost business opportunities. (*Id.* at 102.)

In November 2016, Prairie River Chief Information Officer Austin Figge sent an email to Procura asking for assistance. (*Id.* ¶ 91.) In February 2017, Prairie River and Procura met to discuss the situation, and Procura promised to propose a plan to correct the Software's deficiencies by February 20. (*Id.* ¶ 95.) Procura never sent Prairie River a plan. (*Id.* ¶¶ 96-99.) On March 1, 2017, Prairie River decided to abandon the Software. (*Id.* ¶¶ 100-101.)

## II.    PROCEDURAL BACKGROUND

Prairie River filed this action in state court on October 18, 2017. (Notice of Removal ¶ 3, Ex. A, Nov. 15, 2017, Docket No. 1.) Procura removed the case to federal court. (Notice of Removal ¶ 11.) Prairie River filed an Amended Complaint on December 13, 2017. (Compl.) Prairie River pleads claims of breach of contract, (*id.* ¶¶ 106-23); breach of warranty, (*id.* ¶¶ 124-34); rescission, (*id.* ¶¶ 134-41); and fraudulent inducement (*id.* at pp. 31-33.) With respect to the breach-of-contract claim, Prairie River requests consequential damages, arguing that Procura's willful misconduct permits recovery notwithstanding the Agreement's disclaimer of consequential damages. (*Id.* ¶ 122.)

Procura's Motion to Dismiss is now before the Court. (Mot. to Dismiss, Dec. 27, 2017, Docket No. 27.)

**DISCUSSION**

## I.     STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, the Court considers all facts alleged in the complaint as true to determine whether it states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility[,]'" and therefore must be dismissed. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (quoting *Twombly*, 550 U.S. at 555). Therefore, to survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555.)

## I.     FRAUDULENT INDUCEMENT

Procura moves to dismiss Prairie River's fraudulent-inducement claim, arguing that (1) Prairie River failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b); (2) Prairie River cannot maintain both fraudulent-inducement and breach-of-contract claims; (3) Prairie River's allegations defeat its fraudulent-inducement claim,

-7-

and (4) the false statements alleged by Prairie River were statements of future events or opinions.

Under Illinois law, fraudulent inducement is a form of common-law fraud. *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1287 (Ill. App. Ct. 2013). In order to plead a claim of fraudulent inducement, a plaintiff must allege "(1) a false statement of material fact; (2) knowledge or belief by the defendant that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Id.*

The Court will deny Procura's Motion to Dismiss with respect to Prairie River's fraudulent-inducement claim.

### A.    Pleading Requirements

The Court must decide whether Prairie River pleads fraud with sufficient particularity. The Court will conclude that Prairie River has met the pleading requirements of Federal Rule of Civil Procedure 9(b).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must include "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby. . . . [C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir.

1997) (alterations in original) (quoting *Commercial Prop. Inv'rs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)). However, Rule 9(b) does not require the plaintiff to "allege specific details of *every* alleged fraudulent claim forming the basis of [the] complaint." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006). Instead, the plaintiff must simply show "representative examples" of the alleged fraudulent conduct. *Id.* As a general matter, the "who, what, when, where, and how" of any fraud claim must be pleaded in detail. *Parnes*, 122 F.3d at 550 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

Prairie River's Complaint satisfies the requirements of Rule 9(b). Prairie River alleges that "Procura representatives" made false and misleading statements "during the sale process." (Compl. at p. 32.) Other allegations establish that this "sales process" occurred during demonstrations and meetings between May and October 2015. (*Id.* ¶¶ 12-14, 19.) Prairie River describes the alleged fraudulent statements in detail:

- Procura falsely represented that Procura had other clients in Minnesota billing similar services as Prairie River. (*Id.* at p. 32.)

- Procura misrepresented the Software's ability to handle Prairie River's billing needs. (*Id.*) Specifically, Procura assured Prairie River that the Software could bill in units. (*Id.* ¶ 67.) Procura provided materials stating that the Software "make[s] sure your billing is accurate and timely, and that "[b]illing and collection have never been easier." (*Id.* ¶ 17 (alterations in original).) The Software did not meet these requirements. (*Id.* ¶¶ 69-75.)

- Procura misrepresented the Software's ability to handle Prairie River's documentation needs. (*Id.* at p. 32.) Procura assured Prairie River that the Software had compression capabilities to handle the size of Procura's database. (*Id.* ¶ 18.) Defects in the Software caused Procura's documents to disappear. (*Id.* ¶¶ 46-53.)

- Procura misrepresented that the Software had all the financial-management tools and could perform the same functions as the products being sold by Salo. (*Id.* at

p. 32.)  Procura told Prairie River that Salo's tools were outdated and that Procura had added the necessary components to the Software.  (*Id.* ¶ 63.)  Procura had not implemented Salo's tools into the Software, and the Software did not function without them.  (*Id.* ¶ 64.)

- Procura falsely stated that the Software's Pathways feature was being used by similar organizations.  (*Id.* ¶ 56; *id.* at p. 32.)

- Procura omitted the fact that its only other former Riversoft client had been stuck in implementation for over a year.  (*Id.* at p. 32.)  During the sales process, Procura claimed it had transitioned "tons" of clients from Riversoft and that the transition went smoothly.  (*Id.* ¶ 21.)  Salo informed Prairie River that the other customer had been transitioning from Riversoft for a year.  (*Id.* ¶ 40.)

- Procura misrepresented that a go-live date of January or February 2016 was feasible.  (*Id.* at p. 33; *id.* ¶ 20.)  In November 2015, Salo informed Prairie River that this deadline was "actually laughable."  (*Id.* ¶ 40.)  The Software did not go live until June 1, 2016.  (*Id.* ¶ 41.)

Prairie River alleges that Procura knew that it provided Prairie River with false information, and Prairie River relied on Procura's expertise in deciding to purchase the Software.  (*Id.* ¶¶ 120-21.)  Prairie River alleges that Procura made these false statements to induce Procura to purchase the Software despite its defects and limitations because Procura needed to report the sale on its financial statements.  (*Id.* ¶¶ 24-25, 119).

In sum, Prairie River alleges with a high degree of detail that Procura representatives knowingly made fraudulent statements about the Software's functionality between May and October 2015 during the sales process.  Prairie River has alleged the "who, what, when, where, and how" of its fraud claim with sufficient particularity.  *Parnes*, 122 F.3d at 550.  The Complaint provides Procura with extensive information to ascertain the allegations made against it.  The Court concludes that Prairie River has satisfied the pleading requirements of Federal Rule of Civil Procedure 9(b).

## B.    Inconsistent Theories of Liability

The Court must decide whether Prairie River can maintain claims for both fraudulent inducement and breach of contract.  Under Illinois law, "failure to perform a contractual promise, even when the promise is made with an intent not to perform[,] does not constitute common law fraud."  *Nat'l Wrecking Co. v. Midwest Terminal Corp.*, 601 N.E.2d 999, 1007 (Ill. App. Ct. 1992).  Essentially, a party cannot recover in tort for what is essentially a breach of contract.  *See Masters v. Cent. Ill. Elec. & Gas. Co.*, 129 N.E.2d 586, 597 (Ill. App. Ct. 1995).  However, an exception exists "where the plaintiff is fraudulently induced to enter into the contract in the first place" because fraudulent inducement vitiates the making of the contract itself.  *Johnson v. George J. Ball, Inc.*, 617 N.E.2d 1355, 1361 (Ill. App. Ct. 1993).  Prairie River alleges that Procura made false statements during the sales process to induce Prairie River to purchase the Software.  (Compl. at pp. 32-33.)  Accordingly, the Court concludes that Prairie River's fraud claim falls within the inducement exception and, therefore, Prairie River may maintain both its fraudulent-inducement claim and breach-of-contract claim.

## C.    Inconsistent Facts

The Court must decide whether Prairie River's allegations negated its claim of fraudulent inducement by pleading inconsistent factual statements in the Complaint.  The Court will conclude that Prairie River has permissibly pleaded alternative theories of fact.

In order to plead fraudulent inducement, Prairie River must allege that Procura knowingly made a false statement.  *Avon Hardware Co.*, 998 N.E.2d at 1287.  In its count

of fraudulent inducement, Prairie River alleges that Procura made knowingly false and misleading statements by falsely representing "the Software's capabilities in the United States and in Minnesota." (*Id.* p. 32.) This allegation clearly alleges Procura's fraudulent intent. In contrast, in its count of rescission, Prairie River alleges that "all parties to the Agreement reasonably but wrongly believed that Procura's Software was capable of substantially functioning within the Minnesota and U.S. regulatory requirements applicable to Prairie River's business." (Compl. ¶ 137.) This allegation certainly suggests that Procura did not know that its statements about the Software's capabilities were false. Procura is correct that the allegations are inconsistent.

However, these inconsistent allegations are not fatal to Prairie River's fraudulent-inducement claim. In effect, Prairie River pleads alternative theories of fact.[1] Under the Federal Rules of Civil Procedure, "a claimant may plead inconsistent facts in support of alternative theories of recovery." *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 536 (8th Cir. 1970). Rule 8(d)(3) explicitly permits a party to "state as many separate claims or defenses as it has, regardless of consistency." Although Prairie River's rescission claim and fraudulent-inducement claim – and the underlying factual allegations supporting each

---

[1] The Court acknowledges that Prairie River incorporated all previous allegations of its Complaint in its count for fraudulent inducement. (*See* Compl. at p. 31.) Taken literally, this would mean that Prairie River is alleging both that (1) Procura reasonably but wrongfully believed the Software met regulatory requirements and (2) Procura knew that the Software did not met regulatory requirements. The contradiction is so clear that any reasonable individual would understand Prairie River to be pleading in the alternative. The incorporation of the rescission allegations into the fraudulent-inducement allegations is surely the result of imprecise drafting. The Court will construe the allegations as pleading in the alternative.

– are inconsistent, the Court concludes that Prairie River is free to plead facts in the alternative to support each claim.

### D.    Fraudulent Statements

The Court must decide whether Prairie River has stated a claim for fraudulent inducement.  Procura argues that Prairie River has not alleged any false statements because the alleged statements relate to future events or opinions.  The Court will conclude that Prairie River has alleged at least some statements that are not statements of future events or opinions.

In order to plead fraudulent inducement, Prairie River must allege a false statement of material fact.  *Avon Hardware Co.*, 99 N.E.2d at 1287.  "Statements regarding future events or circumstances are not a basis for fraud.  Such statements are regarded as mere expressions of opinion or mere promises or conjectures upon which the other party has no right to rely."  *Madison Assocs. v. Bass*, 511 N.E.2d 690, 699 (Ill. App. Ct. 1987) (citations omitted).  However, there is an exception to this general rule "where the false statements were part of a fraudulent scheme."  *Id.* at 699-700.

The Complaint alleges that Procura made false statements about existing characteristics of the Software and Procura's current customers.  For example, Procura represented that the Software was capable of servicing Prairie River's Medicare-certified business, but the Software was missing components required to service Medicare and Medicaid clients.  (Compl.  ¶¶ 15, 23, 38.)  Procura represented that it had incorporated Salo's tools into the Software, but Salo's tools had not been incorporated into the Software.

(*Id.* ¶¶ 63-64.)  Procura represented that it had clients in Minnesota with similar billing services as Prairie River, but Procura had no such clients.  (*Id.* at 32.)  These alleged statements are not statements about future events or mere opinions.  During the sales process, Procura would have known whether it had customers similar to Prairie River and whether the Software contained certain features, such as Salo's tools.  In short, Procura would have known the veracity of these statements at the time of the sale.  Prairie River has pleaded false statements of material fact.

At this stage, the Court need not parse every allegation to determine whether it constitutes a false statement.  It is sufficient that some of the false statements alleged do not concern future events or opinions.  And some statements – even if they concern future events – may fall within the exception for false statements made as part of a fraudulent scheme.  *Madison Assocs.*, 511 N.E.2d at 699-700.  Accordingly, the Court concludes that Prairie River has sufficiently alleged that Procura knowingly made false statements.

Having examined all of Procura's arguments, the Court will deny Procura's Motion to Dismiss with respect to Prairie River's fraudulent-inducement claim.

## II.  CONTRACTUAL CLAIMS

Prairie River pleads a number of contractual claims, including (1) breach of contract, (2) breach of express warranty, and (3) rescission.  Prairie River also requests consequential damages stemming from its breach-of-contract claim.  Procura moves to dismiss all of Prairie River's contract claims.  The Court will grant in part and deny in part Procura's Motion to Dismiss with respect to Prairie River's contract claims.

### A.      Applicability of the UCC

As a threshold issue, the Court must decide whether Article 2 of the Uniform Commercial Code ("UCC") applies to the Agreement.  The Court will conclude that the Agreement is a contract for the sale of goods to which Article 2 of the UCC applies.

Article 2 of the UCC applies to "transactions in goods."  810 Ill. Comp. Stat. 5/2-102.  Under Illinois law, whether a sale of software constitutes a "transactions in goods" depends on various considerations.  *Dealer Mgmt. Sys., Inc. v. Design Auto. Grp., Inc.*, 822 N.E.2d 556, 560-62 (Ill. App. Ct. 2005); *see Newcourt Fin. USA, Inc. v. FT Mortg. Cos.*, 161 F. Supp. 2d 894, 896-97 (N.D. Ill. 2001).

One consideration is the rights conferred to the purchaser by the Agreement. "[A] transaction that nominally involves a mere license to use software will be considered a sale under the UCC if it 'involves a single payment giving the buyer an unlimited period in which it has a right to possession.'"  *Dealer Mgmt.*, 822 N.E.2d at 561 (quoting *SoftMan Prods. Co., LLC v. Adobe Sys. Inc.*, 171 F. Supp. 2d 1075, 1086 (C.D. Cal. 2001)).

Another consideration is whether the components of the software package were developed from scratch.  *Id.*  Off-the-rack software is almost always a good.  Customization or modification of a standard software product is generally considered the manufacture of a good rather than a service.  *Id.*  (citing *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.*, 148 F.3d 649, 654 (7th Cir. 1998)).

Additionally, contracts for the sale of software often include provisions of services, such as training and technical support.  "Where there is a mixed contract for goods and services, there is a 'transaction in goods' only if the contract is predominantly for goods

and incidentally for services." *Brandt v. Bos. Sci. Corp.*, 792 N.E.2d 296, 299 (Ill. 2004). Article 2 applies to sales of software where the ancillary services offered are similar to those generally accompanying sales of computer systems, such as installation, training, and technical support. *Dealer Mgmt.*, 822 N.E.2d at 561.

Here, the Agreement is the sale of software that has been customized for Prairie River's business. First, Prairie River purchased a perpetual enterprise license, meaning that Prairie River has a non-transferable right and license to perpetually access and use the Software. (Agreement at 3, 13); *see also Dealer Mgmt.*, 822 N.E.2d at 561. Second, the Complaint and the Agreement suggest that the Software is a standard Procura product. (Compl. ¶¶ 12-18; Agreement at 3.) Customization of the Software is considered the manufacture of the Software in this case. *Dealer Mgmt.*, 822 N.E.2d at 561. Third, the ancillary services provided in the Agreement are the sorts of services – installation, training, and technical support – expected to accompany a sale of software. (Agreement at 5-7); *see also Dealer Mgmt.*, 822 N.E.2d at 561. Accordingly, the Court concludes that the Agreement governs a sale of goods subject to Article 2 of the UCC.

### B.      Breach of Contract

The Court must decide whether Prairie River has stated a claim for breach of contract. The Court will conclude that Prairie River has stated such a claim.

In order to plead a claim of breach of contract, a plaintiff must allege "the existence of the contract purportedly breached by the defendant, the plaintiff's performance of all contractual conditions required of him, the fact of the defendant's alleged breach, and the

existence of damages as a consequence." *Wait v. First Midwest Bank/Danville*, 491 N.E.2d 796, 799 (Ill. App. Ct. 1986).

The parties do not dispute that the Agreement constitutes a contract. Under the Agreement, Procura granted Prairie River a right to access and use the Software in consideration for payment by Prairie River. (Agreement at 3.) The Agreement defines "Software" as "the software, in object form, identified in the Software Order, including related Documentation, Enhancements, Modifications, Upgrade, and Embedded Software." (*Id.* at 2.) The Agreement defines "Documentation" as "the user guides, operating manuals, education materials, product descriptions and specifications, technical manuals, supporting materials, and other information relating to the Software." (Agreement at 1.) Procura also agreed to provide Prairie River with "Software Problem and Hardware support." (*Id.* at 6.) Upon confirmation of a "software problem" (defined as "an inability of the Software to perform, in all material respects, in accordance with its related Documentation"), Procura agreed to "make reasonable efforts to correct the matter." (*Id.* at 2, 6.)

Prairie River alleges that it paid Procura almost $600,000 for the Software and support. (Compl. ¶¶ 102-03, 119.) However, Prairie River alleges that Procura failed to provide it with the Software contracted for because the Software did not comport with the Agreement. (Compl. ¶ 111.) The Complaint describes numerous ways in which the Software did not comport with the Agreement. (Compl. ¶ 112.) The Complaint also alleges that Procura failed to provide technical support to correct the identified software

problems.   (Compl. ¶¶ 114-17; Agreement at 5-7.)   Prairie River alleges that it was damaged by Procura's breach.  (Compl. ¶ 123.)

Prairie River adequately pleads a breach-of-contract claim.  *See Wait*, 491 N.E.2d at 799.  The Court will deny Procura's Motion to Dismiss with respect to Prairie River's breach-of-contract claim.

### C.     Breach of Warranty

The Court must decide whether Prairie River has stated a claim for breach of warranty.  The Court will conclude that the Warranty Provision applies to the sale of the Software and that Prairie River has stated a claim that the Warranty Provision's 90-day notification requirement is unconscionable.  However, the Court will dismiss any claim for breach of the implied warranty of merchantability as insufficiently pleaded.

The Warranty Provision states:   "For Software acquired by Customer as an 'on-premise' software product (for installation on a Customer's Server), during the ninety (90) day period commencing on the Effective Date:  (a) the Software will be capable of functioning substantially in accordance with its applicable Documentation. . . ." (Agreement at 8.)  As a condition for invoking the warranty, the customer is required to "notif[y] [Procura] of the specific non-conformance within the ninety (90) day period referred to therein."  (*Id.*)  Procura would then either modify the Software to conform to the customer's needs, provide a reasonable workaround solution, or terminate the Agreement and return the license fees, less a reasonable amount for prior use.  (Agreement at 9.)

### 1. Applicability of the Warranty Provision

The Court must decide whether the Warranty Provision applies to the sale of Software to Prairie River. The Court will conclude that the Warranty Provision applies to this sale.

The Agreement contains two alternative warranties. (Agreement at 8.) Which warranty applies depends on how the customer acquires the Software: (1) as a SaaS offering, or (2) as an "on-premise" Software product. (*Id.*) The method of acquisition is the **condition precedent** for the Warranty Provision. Prairie River acquired the Software as "on-premise" product and, therefore, this Warranty Provision applies to the sale of Software here. (*Id.* at 13.) The "on-premise" Warranty Provision specifies that it applies "during the ninety (90) day period commencing on the Effective Date." (*Id.* at 8) This is the **duration** of the warranty. For this 90-day period, Procura warrants that "the Software will be capable of functioning substantially in accordance with its applicable Documentation." This is the **warranty**.

To the extent that Procura might be arguing that the duration of the warranty is part of the condition precedent, the Court finds this argument unpersuasive. The condition precedent and the duration of the warranty are separated by a comma: "For Software acquired by Customer as an 'on-premise' software product (for installation on a Customer's Server), during the ninety (90) day period commencing on the Effective Date: . . ." (*Id.* at 8.) With the comma, the plain language of the Warranty Provision forecloses this reading by separating the condition precedent and the duration of the warranty. Moreover, this reading would create an unbalanced result whereby Procura

could delay giving the customer access to the Software solely to circumvent the applicability of the Warranty Provision.

Accordingly, because Prairie River acquired the Software as an "on-premise" Software product, the Warranty Provision applies to the sale in this case.

## 2.    Unconscionability of the 90-Day Notification Requirement

The Court must decide whether Prairie River has stated a claim that the 90-day notification requirement of the Warranty Provision is unconscionable. The Court will conclude that Prairie River has stated such a claim.

In order to benefit from the Warranty Provision, Prairie River was required to notify Procura "of the specific non-conformance within the ninety (90) day period" commencing on the Effective Date. (Agreement at 8.) Procura argues that the duration of the Warranty Provision elapsed before Prairie River notified it of the defects. There is no dispute that Prairie River did not notify Procura of the non-conformities until after the 90-day period. However, Prairie River alleges that the notification requirement is unconscionable because the Software was not installed until after the 90 days had lapsed.

If a court finds that a provision of a contract is unconscionable, the court "may so limit the application of any unconscionable claim as to avoid any unconscionable result." 810 Ill. Comp. Stat. 5/2-302(1). "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by

the bargain, and significant cost-price disparity." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 267 (Ill. 2006) (citation omitted) (quoting *Maxwell v. Fidelity Fin. Servs., Inc.*, 907 P.2d 51, 58 (Ariz. 1995)). "When a party alleges unconscionability, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." 810 Ill. Comp. Stat. 5/2-302(2).

Prairie River alleges that the purpose of the Warranty Provision was "to allow Prairie River a 90-day window to evaluate the Software and its functioning capabilities and notify Procura of any deficiencies." (Compl. ¶ 129.) Prairie River alleges that the notification requirement of the Warranty Provision is unconscionable because it rewards Procura for failing to deliver the Software until after the duration of the warranty had lapsed. Prairie River has alleged an imbalance of obligations because it was only possible for Prairie River to notify Procura about the Software's non-conformities within the 90-day period if Procura provided Prairie River the Software during that timeframe.

Procura argues that there can be no unconscionability as a matter of law because both Prairie River and Procura are sophisticated entities. Agreements reached by sophisticated entities are rarely unconscionable. *See R.O.W. Window Co. v. Allmetal, Inc.*, 856 N.E.2d 55, 60 (Ill. App. Ct. 2006) ("The Courts are less reluctant to hold businessmen to the terms of contracts to which they have entered than consumers dealing with skilled corporate sellers.") But "the mere fact that both parties are businessmen [does not] justify the utilization of unfair surprise to the detriment of one of the parties." *Kinkel*, 857 N.E.2d at 264 (quoting *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 410

(Ill. App. Ct. 1980)). Prairie River alleges a disparity in the sophistication and bargaining power of the parties, (Compl. ¶ 8), and, therefore, the Court cannot conclude that the notification requirement was not unconscionable as a matter of law. Whether the notification requirement is in fact unconscionable is a factual determination best left for a later date. *See* 810 Ill. Comp. Stat. 5/2-302(2).

The Court will therefore deny Procura's Motion to Dismiss with respect to Prairie River's breach-of-warranty claim.

### 3. Implied Warranty of Merchantability

At oral argument, Prairie River suggested that it was also claiming a breach of the implied warranty of merchantability. The Court must decide whether Prairie River has stated a claim under the implied warranty of merchantability.

Under Section 2-314 of the UCC, "[u]nless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 Ill. Comp. Stat. 5/2-314(1). The phrase "as is" disclaims the implied warranty of merchantability unless "circumstances indicate otherwise." 810 Ill. Comp. Stat. 5/2-316(3)(a).

Prairie River neither cites the relevant statutory provisions nor references the implied warranty of merchantability by name in the Complaint or its briefing. In the Complaint, Prairie River only pleads a breach of express warranty. (Compl. ¶¶ 126-27 (quoting the Warranty Provision and stating that Procura "breached **this** warranty." (emphasis added)). In its brief, Prairie River explicitly stated that it pleaded breach of

express warranty.  Prairie River did not make clear that it was raising such a claim until oral argument.  Therefore, Prairie River has not stated a claim for breach of the implied warranty of merchantability.

Accordingly, the Court will grant Procura's Motion to Dismiss to the extent that Prairie River is claiming breach of the implied warranty of merchantability.

### D.    Rescission

The Court must decide whether Prairie River has stated a claim for rescission based on mutual mistake.  The Court will conclude that Prairie River has not stated such a claim because Prairie River has not alleged that the parties had a mutual misunderstanding about the terms of the Agreement.

In order to plead a claim of rescission, a plaintiff must allege that "(1) both parties were mistaken regarding a material feature of the contract; (2) this matter is of such grave consequence that enforcement of the contract would be unconscionable; (3) the plaintiff's mistake occurred despite the exercise of reasonable care; and (4) the other party can be placed in the status quo." *Stewart v. Thrasher*, 610 N.E.2d 799, 805 (Ill. App. Ct. 1993). "In order to be material, the condition must be essential to one of the parties and must be *mutually* agreed upon and understood by the parties." *Id.*  However, "a contract . . . cannot be avoided or disregarded by one of the parties to it because he discover[s] that the contract is less profitable to him than he anticipated when he entered to it." *Diedrich v. N. Ill. Pub. Co.*, 350 N.E.2d 857, 857-58 (Ill. App. Ct. 1976).  The Illinois Court of Appeals has adopted Williston's statement of this rule:

> [T]he fact that the goods are better or worse than supposed or possess different qualities not affecting identity will ordinarily be immaterial and the same principle is applicable to other contracts than those of purchase and sale where the nature or quality of some object is involved.

*Id.* at 858 (13 Williston on Contracts § 1569 (3d ed. 1959)).

Prairie River alleges that "all parties to the Agreement reasonably but wrongly believed that Procura's Software was capable of substantially functioning within the Minnesota and U.S. regulatory requirements" and that "the Software was capable of meeting the needs of Prairie River's home health care business." (Compl. ¶ 137.) Prairie River explains in its Memorandum of Law that, "[u]pon implementation of Procura's Software into Prairie River's business, it became clear that the Software was not capable of substantially functioning in accordance with Prairie River's representations and demonstrations on which Prairie River relied." (Mem. Opp. at 30-31, Jan. 17, 2018, Docket No. 37.) In sum, Prairie River alleges that the Software did not work. *See Diedrich*, 350 N.E.2d at 858. Prairie River does not allege a mutual mistake about a particular term of the Agreement. These allegations alone cannot support a claim of rescission. *Id.*

Accordingly, the Court will grant Procura's Motion to Dismiss with respect to the claim of rescission.

### E.    Consequential Damages

The Court must decide whether Prairie River may recover indirect or consequential damages resulting from Procura's alleged breach of contract. The Agreement disclaims Procura's liability for consequential and incidental damages. (Agreement at 9.) Prairie

River makes two arguments as to why the Court should not enforce the disclaimer: (1) Procura's willful misconduct and (2) unconscionability of the disclaimer provision. The Court will grant Procura's Motion to Dismiss with respect to Prairie River's request for consequential, indirect, and incidental damages.

### 1. Willful Misconduct

The Court must decide whether Prairie River may recover consequential damages as a result of Procura's alleged willful misconduct. Prairie River alleges that, "[a]s a result of Procura's willful misconduct, Prairie River is entitled to recover all of its damages caused by Procura's breaches of the Agreement, including lost profits, irrespective of any language in the Agreement purporting to limit Procura's liability for damages." (Compl. ¶ 122.) Prairie River cites a number of cases that have held that willful misconduct may render a disclaimer of consequential damages unenforceable. However, every case cited by Prairie River applies New York law. *Conk v. Richards & O'Neil, LLP*, 77 F. Supp. 2d 956, 965-66 (S.D. Ind. 1999); *TGB, Inc. v. Bendis*, 845 F. Supp. 1459, 1461 (D. Kan. 1994); *Laudisio v. Amoco Oil Co.*, 437 N.Y.S.2d 502 (N.Y. Sup. Ct. 1981); *Graphic Scanning Corp. v. Citibank, N.A.*, 116 A.D.2d 22, 26 (N.Y. App. Div. 1986); *Kalisch-Jarcho Inc. v. City of New York*, 448 N.E.2d 413 (N.Y. 1983).

Prairie River has not cited – and the Court has not found – any applicable authority to suggest that this rule applies under Illinois law. Prairie River quotes a single line from *Sorkin v. Blackman, Kallick & Co., Ltd.*, to support its arguments that Illinois courts have adopted this rule. 540 N.E.2d 999, 1003 (1989) ("Willful and wanton misconduct affects

the amount of damages in a breach of contract action and is not a separate tort."). *Sorkin* is inapposite. *Sorkin* concerned whether a plaintiff could obtain punitive damages in a contract case where the breach also constituted a separate tort. *Id.* at 1004. *Sorkin* did not address whether a willful breach of a contract renders an exclusion of consequential damages unenforceable.

Absent any relevant authority, the Court concludes that Prairie River cannot recover consequential damages for Procura's alleged willful misconduct.

## 2. Unconscionability

The Court must decide whether Prairie River has stated a claim of unconscionability with respect to the provision excluding consequential damages. "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." 810 Ill. Comp. Stat. 5/2-719(3). Although Prairie River suggested at oral argument that it was arguing such a theory, the Complaint does not allege that the disclaimer of consequential damages is unconscionable. The Complaint only alleges that consequential damages should be awarded because of willful misconduct. (Compl. ¶ 122.) Prairie River clearly envisions willful misconduct and unconscionability as separate theories. The Court concludes that Prairie River has not stated a claim of unconscionability with respect to the exclusion of consequential damages.

Accordingly, the Court will grant Procura's Motion to Dismiss with respect to Prairie River's claim for consequential damages.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Procura's Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 27] is **GRANTED in part and DENIED in part**;

2.     Prairie River's claim for breach of the implied warranty of merchantability is **DISMISSED without prejudice**;

3.     Prairie River's claim for rescission is **DISMISSED without prejudice**; and

4.     Prairie River's claim for consequential damages is **DISMISSED without prejudice**.

DATED:  July 30, 2018                              _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                                            Chief Judge
                                                               United States District Court